## KIMBREL v. MARYLAND CASUALTY CO.

### No. 3217.

Court of Civil Appeals of Texas. Beaumont.

Dec. 1, 1938.

Fred A. White, of Port Arthur, for appellant.

B. T. McWhorter, Jr., and Shivers & Keith, all of Port Arthur, for appellee.

WALKER, Chief Justice.

This is a compensation case. Appellee, Maryland Casualty Company, was the compensation insurance carrier; appellant, J. K. Kimbrel, the employee; and T. F. Ferguson the employer. On the theory that appellant received a compensable injury on the 9th day of February, 1936, while in the course of his employment with T. F. Ferguson, the Industrial Accident Board entered its order awarding appellant compensation against appellee as for total incapacity in the sum of $313.95, and for total partial incapacity, as it related to the use of his hand, for 129 weeks at $5.23 per week. This suit was duly filed by appellee as an appeal from the award. On trial to the court without a jury, judgment was rendered in favor of appellee that appellant take nothing on his cross action.

In support of his judgment, the lower court found that appellant "did not receive an accidental personal injury while in the course of his employment with T. F. Ferguson on or about February 9, 1936." In support of the court's finding, we quote as follows from the statement of facts, questions and answers reduced to narrative:

Appellant testified: "My name is J. K. Kimbrel. I was living in Port Arthur in Jefferson County, Texas, about February 9, 1936. I was working for Frank Ferguson about that day out here towards Amelia in Jefferson County, Texas. February 9, 1936, was Sunday. I was digging a ditch out there, digging a hole 6x6, 8 ft. deep. Something happened to me while I was working on that business. It caved in on my hand there when I was cleaning the shovel out. That was about 1:20 or 1:30, something like that, in the afternoon, right after noon. This injury occurred to me in this County, Jefferson County, out at Amelia. I was down there, it caved in a little bit right after 12 o'clock. I told Bill Sowers, 'it is caving in now.' After that, they went to work at one o'clock, I went in there and shoveled loose dirt out. I was down cleaning my shovel like that on the shovel and my left hand, I had a stick scraping some dirt on the handle of the shovel off and it caved in and hit my hand. A hard lump of dirt caved in and hurt my hand. I don't know exactly how big it was. It weighed ten or fifteen pounds, maybe more. We had done dug the 8 feet, piled that dirt on top, must have been 10 or 12 feet deep, I guess, it fell from. I taken an infection in the hand, turned it black and blue here, and I had a blister here, it busted the blister here, and I taken an infection in it."

B. C. Oldham testified:

"* * * On that day Mr. Kimbrel worked there we were digging the shale pit. It is square. It is 4 x 8, I think.

It is 8 x 4. When it is finished up, it is 4 feet deep. I dug in that shale pit that morning. At noon we had gone down a dept from two to three feet, something like that. The weather conditions out there at that time were just like it is today and yesterday—muddy. I haven't heard that day of a lump of dirt falling on Mr. Kimbrel or hitting him. We went to work at 7 o'clock in the morning, and knocked off for lunch at 12 o'clock. We came back at one. I couldn't swear what time we quit that evening, but we generally quit at five o'clock. That is the usual quitting time. We finished up that shale pit that day. It was four feet deep when we completed it that day. We used five-foot shovels. Mr. Petty was gone some part during the day. I don't know whether he was there that evening or not, but he was gone some time during the day. I did not pay much attention to him. I went on ahead and went to work. He carried us out there that morning. I never heard any discussion about anybody getting hurt out there that day. I never saw Mr. Kimbrel work there before or after that time. He worked one day. That is the day I am talking about we were digging this shale pit."

"I did not work in one pit and Mr. Kimbrel worked in another pit. We worked in the same pit. I worked digging a shell pit. He was working there with us digging the same hole. Mr. Bill, he was building the box. * * * He went on building the box, and we was going on ahead digging the ditch until noon, we come in, ate dinner, and went back out there. We came in to the Beaumont Cafe to eat. I ate at the same place Petty ate and same place that Kimbrel was eating when they was over there."

" * * * In my testimony while ago I spoke about three of us there digging that shale pit that day and I referred to that fellow, I mean the gentleman sitting right back here. That is Mr. Kimbrel. * * * I do recall working on this shale pit this day with Mr. Kimbrel, this gentleman right here. The pit never got more than 4 feet deep at the time we had it completed in the afternoon, and at noon it was not over two or three feet."

Dr. F. J. Beyt testified: "My profession is the practice of medicine and surgery. I have been in general practice since 1925. I am a graduate of Tulane and have a license to practice in this county. I am ac-

quainted with Mr. J. K. Kimbrel. I had occasion to treat Mr. Kimbrel in a medical and professional way. First I treated him, he had a hernia and it was in 1930 I repaired the hernia, and in February of this year I treated him for an infected hand. As far as I remember it was the latter part of February and March and the beginning of April, I treated him. I would say five or six weeks. He had an infection of the palmar surface of the hand, right opposite the ring finger on the left hand and extending up the little finger as well and into his palm. That infection was in the palm of the hand and at the base of the ring finger. The history I got that he was working, I believe, in the oil field at Amelia and he was digging ditches or excavating something with a shovel and he had bruised his hand with the handle. I didn't make an X-ray of the hand. I did not have any history of any concussion or impact or traumatic injury. If I had such a history, I would have made an X-ray picture. An abscess, of course, you have inflammation, you have swelling, redness and tenderness. Of course, when I saw him he was both. He was in the abscess formation at the time I saw him. He had formed an abscess in the palmar surface of his hand. * * * The patient gave me no history of any blow or traumatic injury."

Dr. J. N. Gardner testified: " * * * Assuming that a man were out in a pit digging and a clod of dirt unexpectedly fell against his hand while he had it over a portion of his shovel, didn't bruise or break the skin on the back of the hand, hit him on the back of the hand, assuming such situation existed, in my opinion, say that piece of dirt or clod had struck with such force that it didn't break the skin on the back of the hand or break any bones, the man continued to work for several hours thereafter, and in a day or two, the next day complained of some pain and it kept swelling and a few days later he went to a physician and found a well-developed abscess or an abscess at the base of the ring and little finger, in my opinion I would say that the impact of the dirt on the back of the hand under such conditions probably did not cause this infection. An abscess is an infected area of tissue. Blisters frequently become infected. A boil is an abscess. It is an infection. * * * I got a history from him how he got that hurt. He did not tell me he was out there shoveling dirt and a clod

of dirt hit him on the back of the hand and busted a blister on the palm of his hand, and it was infected afterward. He told me he got hit on the back of the hand and a blister, several days later became infected on the front of his hand. He didn't tell me that. He told me he got hit on the back of the hand and he continued to work, it didn't bother him very much, and that he was laid off the following day, and that the blistered area began to bother him and he went to Dr. Beyt and had the abscess opened where the blister was."

Sam Peddy testified: "My name is Sam Peddy. My initials are J. S. or Sam Peddy. I know Mr. J. T. Ferguson—T. F. Ferguson, contractor. I have worked for him. I am not working for him now and am not connected with him in any way. I was employed by Mr. T. F. Ferguson, up until about, I don't know, 9th or 10th or 11th of February. I disremember the dates, but it was about that time. The work was going on out here at Amelia. I know Mr. J. K. Kimbrel, the gentleman here. I have known him ever since he was a baby. He worked out there for Mr. Ferguson on that work one day during February. I hired him. I was foreman out there and nobody else was. I hired him. He was laying roads and digging ditches and shale pits, and I mean we was setting up the rig. I had some men that was helping me, rough-necks, setting up the rig, laying pipe lines and water lines and gas lines, stuff like that. I think that Mr. Kimbrel was engaged that day in digging a shale pit. I couldn't say that I was there all day long, because I had a gang or two, you know, and I had to go away. I was there, but you know I was off and on from one place to another, you see. There was a shale pit being dug there by my crew that day. I believe them shale pits out there was five feet deep or something like that. If they was any deeper than five feet, they wasn't dug over six feet. That pit Mr. Kimbrel was digging on was between two and three feet deep, I guess, at noon. I had three men in there. I think, digging it, best of my remembrance. I think it was two or three feet deep. It was completed that night. Nobody reported to me that day any injury and

I did not hear of any. Mr. Kimbrel did not report to me that he had got hurt out there. He did not the next day make any report to me that he had got hurt out there. The first time I ever heard of Mr. Kimbrel having claimed he got hurt out here was, oh, I don't know. It was some time in April. * * * There was bound to be clods of dirt around the top of the pit. Where they are digging the ditch, you know, they are going to throw the dirt out. I don't think there was any possibility of that dirt out there falling and striking a man. That is my judgment, you understand. The pit was not more than two or three feet deep at noon because I had three men into it and it was that evening before they completed it yet and I don't believe it was over three feet, you know, just observation."

Mrs. J. S. Peddy testified: "My name is Mrs. J. S. Peddy. I live at Anahuac. I am the wife of Mr. Peddy who just got off the stand. I know Mr. Kimbrel, the gentleman sitting here. He is sometimes known as Kerb or Herb Kimbrel. I have known him for years. During the spring of this year, the month of April, a communication or letter was received by me written by Kerb Kimbrel, had his name signed to it. I do not have that letter. I destroyed it, tore it up. I didn't want my husband to see it. He wanted to know what company they were working for and insurance company and stated that he had got his hand burnt with concrete and that he wanted to put in a claim and he thought if he would stick to him he would put it over by him and he would split with him, whatever he got, and he wanted him to come to Beaumont as soon as he could. That was in April of this year when I received the letter. I destroyed the letter. I didn't want him to see it. I didn't want him to get mixed up in anything like that. He was working on the court house, had a good job, and I didn't want him called off."

The statement we have made from the record satisfactorily supports the trial court's conclusion of fact.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.